**13 CV 2705**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
KIM L. BROWN,

                Plaintiff,

vs.

ARROW FINANCIAL SERVICES, LLC,
LVNV FUNDING, LLC,
& FORSTER & GARBUS, LLP,

                Defendants.
-----------------------------------------------------------------

Civil Action No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff KIM L. BROWN ("Plaintiff"), by and through her attorneys, LAW OFFICES OF ALLISON POLESKY, P.C., as and for her Complaint against the Defendants ARROW FINANCIAL SERVICES, LLC, LVNV FUNDING, LLC, & FORSTER & GARBUS, LLP (collectively herein, "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

### INTRODUCTION

1. Plaintiff brings this action on her own behalf for damages arising from the Defendant's violation(s) of §1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA"). The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices.

### PARTIES

2. Plaintiff is a resident of the State of New York residing in Highland Mills, NY.

3. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4. Defendant ARROW FINANCIAL SERVICES, LLC ("ARROW") is an Illinois business entity engaged in business of collecting debts in this state and judicial district with its principal place of business located at 5996 W. Touhy Ave., Niles, IL 60714.

5. Defendant LVNV FUNDING, LLC ("LVNV") is a South Carolina business entity engaged in business of collecting debts in this state and judicial district with its principal place of business located at 15 South Main St, Suite 600, Greenville, SC 29601.

6. Defendant FORSTER & GARBUS, LLP ("FORSTER") is a New York business entity engaged in business of collecting debts in this state and judicial district with its principal place of business located at 60 Motor Parkway, Commack, NY 11725-9030.

7. Defendants are a "debt collector" as the phrase is defined and used in the FDCPA under 15 U.S.C. §1692a(6).

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as well as 15 U.S.C. §1692 *et seq.* and 28 U.S.C. §2201.

9. The Court has supplemental jurisdiction over any state, local and common law claims in this action pursuant to 28 U.S.C. §1367(a).

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2). Venue in this Court is proper in that Defendants transact business here and the conduct complained of occurred here. Therefore, Jurisdiction is proper under CPLR 302(a), New York's Long-Arm Statute.

## FACTUAL ALLEGATIONS

11. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "10" herein with the same force and effect as if the same were set forth at length herein.

12. On information and belief, on a date better known to the Defendants, Washington Mutual Bank and/or JP Morgan Chase, either directly or through intermediate transactions assigned, placed, transferred, or sold a consumer debt to Defendants for collection ("the alleged debt").

11. The alleged debt is a "debt" as defined by 15 U.S.C. §1692a(5).

12. The alleged debt arose out of a transaction in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes.

13. Within the past one (1) year prior to the filing of this action, Defendants have been engaging in attempts at collecting the alleged debt from Plaintiff.

14. In or about 2009, Defendants ARROW and FORSTER attempted to collect the alleged debt that ARROW claimed was assigned to them by Credit Max.

15. On information and belief, Credit Max was assigned the alleged debt by Washington Mutual Bank.

16. Plaintiff was sued by ARROW, who was represented by FORSTER, in Orange County Supreme Court in 2009.

17. According to the 2009 original Complaint filed by FORSTER, the original creditor was Washington Mutual Bank with an account number ending in 3369.

18. The amount for which Plaintiff was sued was $16,536.07.

19. Plaintiff filed a pro se answer and, subsequently, retained attorney Jason A. Shear ("Shear") as her legal counsel.

20. In 2010, Shear filed a Notice of Appearance with the Court and with FORSTER.

21. Subsequently, Shear appeared at two (2) court dates and spoke to FORSTER's local counsel.

22. In 2011, Shear filed a Notice of Motion to strike FORSTER's Note of Issue and compelled FORSTER to respond to Plaintiff's Discovery Demands.

23. In April 2011, Shear's Motion to strike FORSTER's Note of Issue was granted by the Honorable Robert A. Onofry and therefore FORSTER was obligated to respond to Brown's Discovery Demands.

24. Plaintiff's Discovery Demands demanded documentation and other proofs that Defendants ARROW and FORSTER intended to use in support of its case against Plaintiff.

25. FORSTER never responded to Plaintiff's Discovery demands.

26. FORSTER never produced any documentation or other proofs stipulating that Plaintiff owed the alleged debt on which ARROW and FORSTER were attempting to collect.

27. Subsequently, in approximately July of 2011, Attorney Edward C. Klein ("Klein") at FORSTER contacted Shear and agreed to dismiss the lawsuit brought by ARROW.

28. By way of stipulation, the matter was discontinued and the stipulation was signed by Shear and Klein, by, for and on behalf of ARROW and FORSTER.

29. Based on the above information, there could be no question that ARROW and FORSTER had actual knowledge that Shear represented Brown on the alleged debt.

30. Later, in 2012, Defendant FORSTER, on behalf of Defendant LVNV, sued Plaintiff again on the alleged debt in Orange County Supreme Court.

31. The 2012 Complaint claimed that Defendant LVNV's assignor of the alleged debt was original creditor Washington Mutual Bank with the same original account number ending in 3369.

32. Defendants engaged in deceptive, misleading and unfair practices by falsely stating and/or implying that LVNV purchased the alleged debt from Washington Mutual Bank.

33. In or about September 2008, Washington Mutual Bank "failed" and went into receivership with the FDIC.

34. In or about September 2008, the FDIC and JP Morgan Chase Bank entered into an agreement whereby Washington Mutual Bank would become JP Morgan Chase Bank.

35. As such, on information and belief, as of September 2008, JP Morgan Chase Bank would have owned and/or been the entity controlling the alleged debt.

36. Based upon the above information, Defendants ARROW and LVNV could not have purchased the alleged debt from Washington Mutual Bank; Washington Mutual Bank did not exist by 2009 and certainly not in 2012. Additionally, on information and belief, LVNV acquired the allege debt from some other entity besides Washington Mutual Bank or JP Morgan Chase.

37. In 2009, Defendants ARROW and FORSTER were attempting to collect interest from the 11th day of June 2009 on the alleged debt.

38. In 2012, Defendants LVNV and FORSTER were attempting to collect interest from the 30th day of September 2008 on the alleged debt.

39. Defendants engaged in deceptive and unfair collection actions by suing Plaintiff on the same alleged debt for which she was sued before and for which Defendants agreed to discontinue by stipulation with Plaintiff's legal counsel Shear.

40. Defendants FORSTER and LVNV engaged in deceptive collection actions by suing Plaintiff on a consumer debt that was past the statute of limitations.

41. Defendant ARROW engaged in deceptive collection actions by selling an account to LVNV on which Plaintiff did not owe which was past the statute of limitations and was dismissed in a previous state court debt collection action.

42. In approximately January 2013, Defendant FORSTER sent Article 31 Discovery Demands directly to Plaintiff.

43. By sending said demands directly to Plaintiff, FORSTER violated the FDCPA by contacting a consumer who they knew, should have known or could easily ascertain was represented by legal counsel and Attorney Shear.

44. LVNV violated the FDCPA because LVNV is vicariously liable for FORSTER's conduct.

45. On information and belief, FORSTER communicating with Plaintiff even though she was still represented by Shear was at LVNV's request and direction.

46. Defendant FORSTER's attorney Klein was the attorney of record in both the 2009 and 2012 lawsuits against Plaintiff for the alleged debt.

47. Defendant FORSTER and Klein knew or should have known that Plaintiff was represented by legal counsel and Shear.

48. On or about June 1, 2012, Defendants LVNV and FORSTER mailed a collection letter to Plaintiff directly at her home.

49. Said communication was an impermissible contact by Defendants LVNV and FORSTER to Plaintiff when in fact said communication should have been direct to Shear.

50. To clarify, the alleged debt on which FORSTER was collecting, on behalf of ARROW, was the same debt on which FORSTER was attempting to collect on behalf of LVNV.

51. Therefore, since Plaintiff was represented by Shear and FORSTER explicitly knew that Plaintiff retained such attorney representation regarding said alleged debt, FORSTER was permitted to contact Shear only regarding any communication pertaining to the alleged debt.

52. FORSTER had knowledge of Plaintiff's attorney representation because it was Klein who signed the Stipulation of Discontinuance on the 2009 case and Klein who also signed the Complaint on the 2012 case.

53. Even though the Defendants and Defendants' agents/attorneys had knowledge of Plaintiff's attorney representation, LVNV and Forster contacted Plaintiff directly in violation of 15 U.S.C. § 1692c(a)(2).

54. The aforementioned actions were conducted at the request and direction of Defendants ARROW and LVNV. The FDCPA permits claims wherein consumers allege that a debt buyer is responsible for the acts of its attorney.

55. Based on the above, Defendants ARROW and LVNV are vicariously liable for their attorneys'/agents' conduct.

56. After Plaintiff received Discovery Demands from Defendants, she became nervous and distraught due to wondering if she was protected by hiring an attorney. As a least sophisticated consumer, she wondered if having attorney representation would be enough to protect her from having to pay on an account that she did not owe. She also wondered what would happen to her if she did not respond to these Discovery Demands. She suffered emotional distress and confusion wondering about what could possibly happen to her.

57. Because Defendants were still assertively contacting her in an attempt to collect on this alleged debt, Plaintiff worried and underwent severe emotional distress. She was extremely worried that Defendants would continue to sue her for a debt on which she did not owe and instead go forward with any means possible to collect on the alleged debt. Therefore, she was deeply concerned that she would have to pay them on an account on which she did not owe.

58. Defendants violated 1692c(a)(2) by directly contacting Plaintiff even though Defendants possessed full awareness that Plaintiff was being represented by an attorney. Specifically, Defendants violated the FDCPA by sending written communication to Plaintiff when Defendants knew full well that she retained attorney representation.

59. Specifically, 15 U.S.C. section 1692c(a)(2) prohibits consumer contacts by a debt collector who knows the consumer is represented by an attorney with respect to a consumer debt.

60. Once a debt collector learns that the consumer is represented by an attorney, the collector must deal exclusively with the consumer's attorney and is legally forbidden from contacting the consumer even to confirm said attorney's retention.

61. Plaintiff worried that she would have to pay more and more money in order to continually retain an attorney to defend her from being sued on a consumer debt for which she was not responsible.

62. Based on the aforementioned actions by Defendants, Plaintiff suffered a great deal of emotional distress, stress, anxiety and loss of sleep.

63. As of this date, Defendants have not produced the documentation or other proofs that they intended to use in support of its case against Plaintiff.

64. As of this date, Defendants have not produced the documentation or other proofs that they intended to use in support of its case against Plaintiff despite being ordered to do so by Honorable Robert A. Onofry in 2009.

65. As of this date, Defendants have not produced the documentation or other proofs that they intended to use in support of its case against Plaintiff despite having since 2009 to present, approximately four (4) years, to produce said items.

66. On information and belief, Defendants are unable and/or unwilling to produce said documentation or other proofs.

## FIRST CAUSE OF ACTION
## FAIR DEBT COLLECTION PRACTICES ACT

67. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "66" herein with the same force and effect as if the same were set forth at length herein.

68. Defendant's debt collection attempts attempted and/or directed towards the Plaintiff violate various provisions of the FDCPA, including but not limited to the following:

    a. <u>15 U.S.C. §1692c(a)(1)</u>.

    b. <u>15 U.S.C. §1692c(a)(2)</u>.

    c. <u>15 U.S.C. §1692d-preface</u>.

    d. <u>15 U.S.C. §1692e-preface, (2)(A), (5), (6), (8), (10), and (14)</u>.

    e. <u>15 U.S.C. §1692f-preface and (1)</u>.

    f. <u>15 U.S.C. §1692g</u>.

69. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to damages in accordance with the FDCPA.

## SECOND CAUSE OF ACTION
## NEW YORK STATE GENERAL BUSINESS LAW §349

70. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "69" herein with the same force and effect as if the same were set forth at length herein.

71. Defendants' debt collection efforts attempted and/or directed towards the Plaintiff violated New York State General Business Law § 349.

72. As a result of Defendants' above violations of the New York General Business Law, the Plaintiff has been damaged and is entitled to damages in accordance with the New York General Business Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff KIM L. BROWN demands judgment from the Defendants ARROW FINANCIAL SERVICES, LLC, LVNV FUNDING, LLC, & FORSTER & GARBUS, LLP as follows:

    A.    For actual damages provided and pursuant to 15 U.S.C. §1692k;

    B.    For statutory damages of $1,000.00 provided and pursuant to 15 U.S.C. §1692k;

    C.    Damages pursuant to New York General Business Law § 349;

    D.    For attorneys' fees, costs and disbursements;

    E.    For an award of pre-judgment interest on all sums awarded and/or collected;

    F.    For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff KIM L. BROWN hereby respectfully requests a trial by jury for all claims and issues in her Complaint to which she is or may be entitled to at a jury trial.

Dated:      April 18, 2013

Respectfully submitted,

**LAW OFFICES OF ALLISON POLESKY, P.C.**

By: _____
Allison Polesky, Esq. (AP5446)
LAW OFFICES OF ALLISON POLESKY, P.C.
75 S. Broadway, 4th Fl.
White Plains, New York 10601
Phone:     914-610-3207
Facsimile: 914-610-3770
Email: apolesky@poleskylaw.com
Attorney for the Plaintiff KIM L. BROWN